UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00495-BJB-CHL

KATHERINE L.,[1]                                                                 Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                 Defendant.

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Katherine L. ("Claimant").  Claimant

seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare

a report and recommendation.  (DN 10.)  Claimant and the Commissioner each filed a Fact and

Law Summary.  (DNs 12, 18.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the

Commissioner be **AFFIRMED**.

## I.    BACKGROUND

On or about July 20, 2016, Claimant filed an application for disability insurance benefits

("DIB") alleging disability beginning on August 8, 2013.  (R. at 102-03, 119, 138, 142, 302-03.)

On July 27, 2018, Administrative Law Judge ("ALJ") David Peeples ("the ALJ") conducted a

hearing on Claimant's application.  (*Id.* at 69-101.)  In a decision dated December 3, 2018, the

ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to

determine whether an individual is disabled and found that Claimant was not disabled.  (*Id.* at 139-

59.)  Claimant appealed the decision to the Appeals Council, who remanded the case to the ALJ

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

based on lack of substantial evidence and errors of law pursuant to 20 C.F.R. § 404.970.  (*Id.* at 160-63, 254-55, 502-04.)   On July 14, 2020, the ALJ conducted an additional hearing on Claimant's application.  (*Id.* at 32-68.)  In a decision dated September 11, 2020, the ALJ again engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled and found that Claimant was not disabled.  (*Id.* at 9-31.)  In doing so, the ALJ made the following findings:

1.   The claimant last met the insured status requirements of the Social Security Act on March 31, 2018.  (*Id.* at 14.)

2.   The claimant engaged in substantial gainful activity following the alleged onset date until January of 2014.  (*Id.*)

3.   However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period the claimant did not engage in substantial gainful activity.  (*Id.*)

4.   Through the date last insured, the claimant had the following severe impairments: mononeuropathy of the right upper extremity; lesion of the radial nerve of the left upper extremity; depression; spinal headaches; and obesity.  (*Id.* at 15.)

5.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

6.   Through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk for six hours in an eight-hour workday.  She could sit for six hours in an eight-hour workday.   She would have needed to alternate position from sitting or standing after 30 minutes of either sitting or standing.  She could push and pull as much as she could lift and carry. She could climb ramps and stairs occasionally.  She could never climb ladders, ropes, and scaffolds.  She could stoop, kneel, and crawl frequently. She could reach overhead bilaterally occasionally.  She should have avoided concentrated exposure to vibrations.  She should have avoided all exposure to workplace hazards such as unprotected heights or moving mechanical parts.  She could understand and remember simple instructions.  She could

sustain attention for extended periods of two-hour segments for simple tasks. She could tolerate occasional (not more than a third of the time) contact with coworkers, supervisors, and the public. She would have required a low stress environment requiring few decisions or judgments to be made in the workplace with regard to simple repetitive tasks, no assembly line work or strictly-enforced daily production quotas, and few changes in routine work setting. (*Id.* at 16.)

7.    Through the date last insured, the claimant was unable to perform any past relevant work. (*Id.* at 21.)

8.    The claimant . . . was 44 years old, which is defined as a younger individual age 18-49, on the date last insured. (*Id.*)

9.    The claimant has at least a high school education. (*Id.*)

10.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

11.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (*Id.*)

12.   The claimant was not under a disability, as defined in the Social Security Act, at any time from August 8, 2013, the alleged onset date, through March 31, 2018, the date late insured. (*Id.* at 22.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on June 3, 2021. (*Id.* at 1-6, 298-301, 525-26.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2021); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Claimant timely filed this action on July 30, 2021. (DN 1.)

## II.     DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities.  *See* 42 U.S.C. §§ 401-434.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2021).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.      Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. § 404.1520 (2021).  In summary, the evaluation process proceeds as follows:

(1)      Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)      Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)      Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509 (2021).

always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant challenged the ALJ's determination of her RFC and findings at step five regarding the availability of other work in the national economy.  (DNs 12, 12-1.)  With regard to the ALJ's RFC finding, the Claimant argued that the ALJ misevaluated the evidence regarding her ability to sit, stand, and walk; misevaluated the evidence regarding her ability to use her upper extremities; misevaluated the evidence regarding her headaches; improperly analyzed the evidence regarding her pain; and misevaluated the opinion evidence of record including those of her treating nurse practitioner and chiropractor.  (DN 12-1, at PageID #3624-34.)  Regarding the ALJ's step five findings, Claimant argued that the ALJ cited to obsolete jobs/job descriptions; one of the jobs cited by the ALJ was inconsistent with his determination of her RFC; and the number of jobs identified by the vocational examiner ("VE") and relied upon by the ALJ did not satisfy the threshold regulatory requirements.  (*Id.* at 3635-38.)  The undersigned will address each of these arguments below.

To the extent that Claimant attempted to argue that the ALJ should have imposed additional mental limitations and limitations regarding her balance and coordination, the undersigned finds that Claimant has waived these perfunctory arguments.  Claimant made a two-sentence argument in her brief that the ALJ should have addressed potential limitations related to "memory loss, decreased concentrating ability, poor coordination and not falling, [and] loss of balance," citing one medical record dated *after* Claimant's March 31, 2018, date last insured.[3]  (DN 12-1, at PageID

---

[3] To qualify for disability, a claimant must demonstrate that he or she was disabled before the expiration of his or her insured status.  20 C.F.R. § 404.131 (2021); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).  Accordingly, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).

# 3630 (citing R. at 2041).)  Claimant failed to cite to records within the relevant period or to connect the record she did cite to her condition prior to the expiration of her insured status.  She likewise failed to offer a more detailed description of how the record supported a need for greater limitations.  Thus, the undersigned concludes she has waived such an argument.  See *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).  Her perfunctory arguments are particularly deficient given the robust case law supporting the proposition that the ALJ "is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

## 1.      RFC

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), (2021).  The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources.  20 C.F.R. § 404.1545(a)(1)-(4); 20 C.F.R. § 404.1529 (2021).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations.  20 C.F.R. § 404.1527 (2021); 20 C.F.R. § 404.1529(a).  Here, the ALJ found that Claimant had the RFC to perform a limited range of light work and imposed various postural, manipulative,

environmental, and mental limitations.  (R. at 16.)  In particular, Claimant challenged the ALJ's findings with respect to her ability to sit, stand, and walk; her ability to use her upper extremities; her headaches; her pain; and the opinion evidence in the record.  (DN 12-1, at PageID #3624-34.) The undersigned will address each of these issues below.

a)      **Ability to Sit, Stand, and Walk**

The ALJ found that Claimant could stand and walk for six hours out of an eight-hour workday, could sit for six hours out of an eight-hour workday, and needed to alternate position from sitting or standing after thirty minutes.  (R. at 16.)  In support, the ALJ noted that Claimant testified at the hearing to having "issues with pain prevent[ing] her from sitting or standing for very long." (*Id.* at 17.)  The ALJ recounted that while the record demonstrated that Claimant had a history of spinal and left leg/foot problems, including at least two surgeries on her left foot, "the claimant d[id] not appear to have been unable to ambulate effectively on a sustained basis because of foot problems." (*Id.* at 18 (citing *id.* at 1627, 2067-68).)  He noted multiple instances in the record of normal gait and/or heel and toe walk.  (*Id.* at 18 (citing *id.* at 550, 2044).)  He described imaging records regarding Claimant's spine as "rather unremarkable," explaining that an April 2019 MRI of Claimant's cervical spine revealed only minimal degenerative changes or mild facet arthropathy and that a November 2019 MRI of Claimant's lumbar spine also revealed only mild degenerative disc disease.  (*Id.* at 18 (citing *id.* at 2297-98, 3493-94).)  The ALJ cited earlier imaging records of Claimant's thoracic spine that revealed no foraminal narrowing.  (*Id.* at 18 (citing *id.* at 1636-39).)  He noted that Claimant had a positive response to pain management treatment, including an April 17, 2018, note regarding the relief she received from lumbar facet block therapy.  (*Id.* at 18 (citing *id.* at 2016).)  He also emphasized that Claimant had a history of obesity and that he considered the same "individually and in combination with all of the

8

[C]laimant's other various musculoskeletal concerns." (*Id.* at 18 (citing *id.* at 1607, 1291).) The ALJ concluded that "considering the combination of the [C]laimant's obesity with the [C]laimant's other various musculoskeletal concerns," the RFC he imposed properly described her ability to sit, stand, and walk. (*Id.* at 19.)

Claimant argued that the ALJ's decision regarding her ability to sit, stand, and walk was unsupported by substantial evidence. (DN 12-1, at PageID # 3624-25.) In support, she cited her own testimony regarding her limitations as well as two medical records from Fall 2018. She emphasized that her neurosurgeon noted that the steroid injections she received did not completely alleviate her pain and that when she visited her foot and ankle specialist after surgery she complained that she felt she was walking funny, she was having difficulty walking, and that her foot problems were contributing to her back pain. (*Id.* at 3625 (citing R. at 2041, 2048).) She also cited in support to the opinions of consultative examiner ("CE") J. Roy Watson, M.D., ("Dr. Watson"); her treating nurse practitioner Christina McDowell ("Ms. McDowell"); and her treating chiropractor Kent Ruskowski, D.C., ("Dr. Ruskowski"). (DN 12-1, at PageID # 3624-25.) While the undersigned will consider her claims regarding the ALJ's treatment of her pain and the medical opinion evidence of record in greater detail below, the undersigned finds that Claimant has done nothing more with regard to her ability to sit, stand, and walk than to point to other evidence in the record from which the ALJ could have reached an opposite conclusion to the one he did reach. This is insufficient to demonstrate that the ALJ's decision is unsupported by substantial evidence and is not the question asked by the Court on substantial evidence review. *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. The evidence Claimant cited did not so call into question the ALJ's analysis so as to suggest that the ALJ mischaracterized the record or otherwise improperly summarized the trends in the same. Given the evidence relied on by the ALJ regarding Claimant's

lack of difficulty walking and her back, the undersigned finds that Claimant has failed to demonstrate that greater functional limitations were appropriate.  Thus, the undersigned finds that the ALJ's RFC regarding Claimant's ability to sit, stand, and walk was supported by substantial evidence.

### b)      Use of Upper Extremities

The ALJ found that Claimant had the RFC to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently and that she could reach overhead bilaterally occasionally. (R. at 16.)  In support, the ALJ noted that Claimant had been diagnosed with mononeuropathy of her right upper arm and a radial nerve lesion of her left upper arm.  (*Id.* at 17 (citing *id.* at 1191).) He emphasized that though Claimant's problems with her left arm began in 2012, Claimant returned to medium work for a time.  (*Id.* at 17 (citing *id.* at 538).)  He generalized that "the objective physical examination findings of record have not consistently revealed the [C]laimant to have overly remarkable strength deficits," citing evidence of 4/5 grip strength during a consultative examination and 5/5 grip strength at a September 12, 2017 evaluation.  (*Id.* at 17 (citing *id.* at 867, 1290).)  He determined that such findings did not support Claimant's narrative regarding her impairments.  (*Id.* at 17.)  He summarized that Claimant had right carpal tunnel release and right Guyon's canal release procedures in February 2018.  (*Id.*)  He emphasized that on June 25, 2018, Claimant's provider described her work status as "regular" and that she had no hand limitations at that time.  (*Id.* at 17 (citing *id.* at 2030).)  He noted that Claimant had full range of motion in her hands and wrists in October 2018 and reported doing well.  (*Id.* at 17 (citing *id.* at 2378, 2381).) He concluded that Claimant should avoid "more than occasional overhead reaching given the combination of her upper extremity impairments along with her history of cervical degeneration." (*Id.* at 19.)  In support, he also cited to the opinion of state agency medical consultant Dr. Lisa

Beihn, M.D., ("Dr. Beihn") who had found that Claimant was capable of only occasional overhead reaching due to her cervical degenerative disc disease and her chronic pain. (*Id.* at 20, 132.)

Claimant argued that the combination of her upper extremity impairments should have resulted in additional limitations. (DN 12-1, at PageID # 3625-27.) She emphasized that she has had "over five surgeries on her bilateral upper extremities." (*Id.* at 3625.) She argued that the ALJ improperly concluded that she was doing well after her procedures, citing evidence of decreased range of motion. (*Id.* at 3626 (citing R. at 867).) She argued that nothing in the record supports that she only has trouble with overhead reaching and cited her own testimony that "she is able to only perform occasionally any movement involving her upper extremity." (DN 12-1, at PageID # 3626.) Though she claimed that the record supported her testimony on this point, she cited only a few instances when she reported her symptoms to providers. (*Id.* at 3627 (citing R. at 606, 873).) As with her ability to sit, stand, and walk above, the undersigned finds that Claimant's argument amounts to nothing more than an attempt to point to other evidence in the record that would support a different conclusion than that reached by the ALJ. *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. Claimant did not point to sufficient records to support that the ALJ mischaracterized or misunderstood the evidence of record or otherwise cite records to undermine sufficiently the ALJ's assessment of what the record reflected regarding her impairments. Though the ALJ's assessment of her pain will be discussed in more detail below, the Claimant did not provide any support for the idea that the ALJ was required to accept her own testimony regarding her limitations without further inquiry. Given the evidence relied on by the ALJ as detailed above, the undersigned finds that Claimant has failed to demonstrate that greater functional limitations were appropriate and that the ALJ's RFC regarding Claimant's use of her extremities was supported by substantial evidence.

c)      **Headaches**

At step two, the ALJ found Claimant's spinal headaches to be a severe impairment.  (R. at 15.)  In his RFC determination, the ALJ found that "the frequency and intensity of headaches the [C]laimant suggested at the hearing does not appear to be definitively supported by the treatment record."  (*Id.* at 18.)  The ALJ noted that Claimant did not repeatedly seek "urgent care on a monthly basis for unbearable headache pain" and emphasized that in a February 19, 2018, record Claimant referenced only intermittent headaches.  (*Id.* at 18 (citing *id.* at 1606).)  The ALJ noted that Claimant had issues with headaches from the time she was eighteen-years old but still managed "to work despite her headaches for many years."  (*Id.* at 18 (citing *id.* at 880).)  He recounted that in a September 9, 2014, medical record, Claimant alleged that her headaches decreased following injection therapy.  (*Id.* at 18 (citing *id.* at 2921).)  But perhaps most significantly, the ALJ noted that despite allegations that Claimant's headaches were related to a Chiari malformation, "the record lacks clear evidence to reasonably verify the criteria to specifically support a diagnosis," summarizing that an April 2019 MRI noted "only minimal cerebellar tonsillar ectopia, which did not reach the criteria for Chiari 1 malformation."  (*Id.* at 18 (citing *id.* at 3493-94).)

Claimant argued that her headaches would have caused disabling absenteeism and should have caused the ALJ to limit her to less than a sedentary range of work.  (DN 12-1, at PageID # 3627-29.)  She cited to medical records where she told her providers that she has headaches nearly every day and that they "often occur multiple times a week and can last for days."  (*Id.* at 3627 (citing R. at 802, 835).)  She cited to a medical record where she reported her headache pain ranged from 6/10 to 10/10.  (DN 12-1, at PageID # 3627-28 (citing R. at 835).)  She argued that her explanation of her limitations was consistent with her records, but she did not provide citations to

support her claims.  She emphasized that she complained of near constant headaches to her provider as of September 12, 2017, and that the same is not indicative of her ability to be employed full-time.  (DN 12-1, at PageID # 3628.)  She also admitted that "[w]hile it is true that some of [ ] [her] imaging does not conclusively indicate Chiari Malformation, her team of medical providers continued to look into that diagnosis and treat her headaches as spinal in origin and connected to a Chaiari malformation, even though it was not currently operable."  (*Id.* (citing R. at 3505).)  However, her argument is not supported by the medical record she cited.  In the record summarizing her August 27, 2019, visit to ULP Neurosurgery, the Discussion/Summary section provided:

> She has headache [*sic*] but there is evidence that she does not have a real Chiari syndrome, and she also does not meet criteria for pseudotumor.  When her updated, upgraded imaging did not show a tight foramen magnum, or significant tonsillar descent, we organized a radiology guided LP.  Opening pressure was 120mmH2O, not at all high, not even close.  [F]luid was not remarkable otherwise.
>
> I cannot suggest that surgery would help her at this point and I think she should return to a headache neurologist.

(R. at 3505.)  This record does not support her claim that her providers treated her headaches as related to a Chiari malformation.  And even more pivotally, it does not indicate what if any functional limitations her providers derived from her claims of disabling headache pain.  In view of the evidence relied on by the ALJ above, as with her other arguments, the undersigned finds that Claimant has again done nothing more than to attempt to point to evidence in the record that could support a conclusion opposite to the one reached by the ALJ.  *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108.  This is insufficient; the undersigned finds that the ALJ's assessment of her headaches and refusal to impose any limitations related to the same in his RFC determination was supported by substantial evidence.

13

### d)      Pain and 20 C.F.R. § 404.1529

Claimant also argued that the ALJ's analysis of her pain was flawed and inconsistent with the applicable regulations.  (DN 12-1, at PageID # 3629-30.)  When forming an RFC, an ALJ must assess the claimant's subjective allegations alongside medical records and physician opinions.  20 C.F.R. §§ 404.1527, 404.1529(a).  The regulations note that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.  20 C.F.R. § 404.1529(a).  If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ should consider a number of factors including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.").  However, the regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ

14

was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . .").

Here, the ALJ acknowledged his responsibility to consider the evidence in this manner in accordance with 20 C.F.R. § 404.1529.  (R. at 16.)  He then summarized the process described above in his decision and proceeded to extensively cite to the record in support of his conclusion that "a wholly incapacitating level of restriction [wa]s not reasonably substantiated by the overall objective medical evidence and treatment narrative on a sustained basis." (*Id.* at 16-17.)  Nothing about the ALJ's opinion compels a conclusion that he failed to the follow the applicable regulations outlined above.  Claimant's brief fails to cite to specific examples of errors in the ALJ's analysis or evidence he failed to consider that meaningfully impacts his conclusion.  Claimant outlines no relevant 20 C.F.R. § 404.1529 factors and related evidence that the ALJ should have considered or that the ALJ misevaluated.  Instead, she merely repeats her own testimony regarding her limitations, testimony the ALJ rejected in his decision with supporting citations to medical records that the undersigned found above constituted substantial evidence.  In view of a lack of any more specific argument from Claimant, the undersigned finds that her allegations of error regarding the ALJ's assessment of her pain are without merit.

### e)      Opinion Evidence

Claimant argued that the ALJ improperly assessed the opinion evidence of record.  The new rules for evaluating opinion evidence do not apply to Claimant's claim because her application was filed before March 27, 2017.  *Compare* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c (2021) ("For claims filed . . . on or after March 27, 2017, the rules in this section apply.").  Thus, under the rules applicable to Claimant's case, the source of a medical opinion dictates the process by which the

15

ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375; 20 C.F.R. § 404.1527(c). Treating physicians' opinions carry more weight because the opinions likely provide "a detailed, longitudinal picture" of the claimant's medical impairments that cannot be obtained solely from objective medical findings or from reports of consultants' examinations. *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004). An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination."). In other words, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34490, 34492 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (March 27, 2017)).[4]

The Claimant argued that the ALJ erred in failing to give controlling weight to the opinions of her treating nurse practitioner, Ms. McDowell, and chiropractor, Dr. Ruskowski. (DN 12-1, at

---

[4] Because Claimant's claim was filed before March 27, 2017, SSR 96-2p still applies to her claim.

PageID # 3631-34.) Nurse practitioners and chiropractors are not acceptable medical sources under the old regulations applicable to evaluating opinion evidence and instead are classified as "other sources." *Compare* 20 C.F.R. § 404.1513(a) (2016) (defining "acceptable medical sources" to include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists, the latter three only for certain purposes specified in the regulation), *with id.* at § 1513(d)(1) (defining other sources to include medical sources not otherwise listed in 20 C.F.R. § 1513(a) and including nurse practitioners and chiropractors as specific examples of "other sources"). Only treating sources that are acceptable medical sources are eligible to be given controlling weight under the so-called "treating-physician rule." 20 C.F.R. § 404.1527(c)(2). Thus, to the extent Claimant argued that Ms. McDowell's and Dr. Ruskowski's opinions were entitled to controlling weight or that the ALJ was required to provide "good reasons" for failing to give them that weight, her argument fails under controlling law. Nonetheless, even though the ALJ was not required to give those opinions controlling weight, the ALJ was still required to evaluate them "using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ is not necessarily required to discuss the factors, an ALJ generally should still explain the weight given to "other source" opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[ ] when such opinions may have an effect on the outcome of the case." SSR 06-03p, 71 Fed. Reg. 45593, 45596 (Aug. 9, 2006) (rescinded for all claims filed on or after March 27, 2017, by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. at 15263).

Claimant argued that the ALJ should have "afforded great weight to the opinions of [Ms.] McDowell and Dr. Ruskowski and [that] the ALJ failed to articulate sufficient reason for affording critical portions of these opinions little weight."  (DN 12-1, at PageID # 3634.)  She emphasized that the ALJ did not discuss the applicable factors in analyzing her providers' opinions.  However she cited no authority requiring the ALJ to discuss each and every factor in his decision. Nonetheless, an examination of the ALJ's decision compels the conclusion that he did consider the applicable factors and found the supportability and consistency factors to weigh against assigning significant weight to Ms. McDowell and Dr. Ruskowski's opinions.  He assigned both providers' opinions little weight.  (R. at 20.)  Ms. McDowell authored three opinions in the record. In the first, among other limitations, she opined that Claimant could walk no city blocks without rest or severe pain, could only sit for ten minutes at a time, could only stand for fifteen minutes at a time, could sit and stand/walk for less than two-hours in an eight-hour workday, needed to be able to shift positions at will, and needed to take breaks every fifteen minutes and rest for thirty minutes to an hour before returning to work.  (*Id.* at 871-72.)  She also found that Claimant had significant limitations with reaching, handling, and fingering such that Claimant could only grasp, turn, and twist objects and perform fine manipulations 20% of the time during an eight-hour workday.  (*Id.* at 873.)  She opined that Claimant could never perform any reaching overhead. (*Id.*)  In one later opinion, she reaffirmed that Claimant's condition had persisted since the previous evaluation but offered no new analysis or opinion regarding claimant's functional limitations.  (*Id.* at 3465.)  In another opinion, she merely signed a check-box statement affirming her opinion that Claimant was "permanently and totally disabled and will never be gainfully employed."  (*Id.* at 1940.)  The ALJ found that Ms. McDowell's opinions were "not well supported or commensurate with the objective physical examination and diagnostic findings previously referenced herein" and

that the same overstated Claimant's impairments.  (*Id.* at 20.)  He also noted that Ms. McDowell was not an acceptable medical source and that for all of those reasons, he was affording her opinions little weight.  (*Id.*)  Dr. Ruskowksi found that Claimant could only walk one city block without rest or severe pain, could only sit or stand for thirty minutes at a time, could stand and walk for two hours in an eight-hour workday, could sit for four hours in an eight-hour work day, needed to walk around every forty-five minutes for at least two minutes, needed to be permitted to shift positions at will, and did not have significant limitations with reaching handling or fingering.  (*Id.* at 1013-15.)  The ALJ found that Dr. Ruskowski overstated the Claimant's limitations and that "[h]is assessment [wa]s not well supported by or commensurate with the objective physical examination and diagnostic findings previously referenced in" the ALJ's decision.  (*Id.* at 20.)  As with Ms. McDowell's opinion, the ALJ observed that Dr. Ruskowski was not an acceptable medical source.  (*Id.*)  The ALJ's analysis of both providers' opinions implicated the supportability and consistency factors he was required to consider in analyzing the opinions.  Elsewhere in his RFC determination, the ALJ discussed Claimant's impairments in detail with citations to her medical records.  That discussion reinforces that he viewed the record as supporting lesser limitations on Claimant's ability to stand, sit, walk, and use her upper extremities than those espoused by either Ms. McDowell or Dr. Ruskowski.  As set forth above, Claimant has failed to demonstrate that the record supported greater limitations in those functional areas.  The undersigned also finds Claimant's argument that the ALJ should have somehow afforded great weight to both Ms. McDowell and Dr. Ruskowski's opinions inconsistent as the two offered in some areas vastly different opinions as to Claimant's capabilities.  For example, while Ms. McDowell opined that Claimant had significant limitations on her ability to grasp, twist, and manipulate objects; perform fine manipulations; and perform overhead reaching, Dr. Ruskowski

opined that Claimant had no such limitations.  (*Compare id.* at 873, *with id.* at 1015.)  Dr. Ruskowski also found that Claimant could sit for four hours in an eight-hour workday while Ms. McDowell found Claimant could sit for less than two hours in an eight-hour workday.  (*Compare id.* at 1014, *with id.* at 872.)  Ms. McDowell opined that Claimant could lift and carry only ten pounds rarely, but Dr. Ruskowski found that Claimant could carry ten pounds frequently and between twenty and fifty pounds occasionally.  (*Compare id.* at 872, *with id.* at 1014.)  These inconsistencies undermine Claimant's argument about the weight to be afforded to these providers' opinions.  Thus, the undersigned concludes that the ALJ's analysis of Ms. McDowell's opinions and Dr. Ruskowski's opinions was in compliance with the applicable regulations and supported by substantial evidence.

The Claimant also argued that the ALJ improperly rejected the medical opinions of her providers in the record and instead improperly "made his own medical determinations and dr[e]w his own conclusions in a very complex and medically difficult claim[ ] that involves thousands of pages of medical records."  (DN 12-1, at PageID # 3633.)  She also called the ALJ's decisions as to what weight to be afforded to the other opinion evidence in the record "convoluted and inconsistent" and accused the ALJ of "cherry-pick[ing] which portions of the opinions to find credible based on mere speculation." (*Id.* at 3632.)  Contrary to Claimant's position, an ALJ is not required to base his RFC on a medical opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant's] physical impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered").  Instead, the determination of a claimant's RFC is left to the ALJ.  20 C.F.R.

§ 404.1527(d)(2); 20 C.F.R. § 404.1546(c).  The ALJ did not, however, reject all the opinion evidence in the record; he weighed the opinion evidence and found one opinion, that of state agency medical consultant Dr. Beihn more consistent with the medical record.  (R. at 20.)  The ALJ observed that Dr. Beihn's opinion was entitled to "good weight" though it could not "be accepted outright" because Dr. Beihn "did not have the opportunity to consider the hearing level evidence."  (*Id.*)  The ALJ largely adopted Dr. Beihn's view of Claimant's functioning except that the ALJ also found that Claimant needed the option to alternate between sitting and standing at thirty-minute intervals.  (*Compare id.* at 16, *with id.* at 131-36.)  All of the other medical opinions in the record reflect a lesser level of functioning than Dr. Beihn, and the remaining opinions are not consistent with each other in terms of proposed limitations.  (*Compare id.* at 870-74, *with id.* at 1012-17, *and id.* at 866-69.)  Especially in view of the lack of consistency of the other opinions, as opposed to cherry-picking, the ALJ's analysis of the opinion evidence reflected his proper consideration of which opinion was most consistent with the medical records as required by the applicable regulations.  Accordingly, the undersigned finds Claimant's arguments regarding the ALJ's analysis of the opinion evidence to be entirely without merit and that the same was supported by substantial evidence.

### 2.     Step Five

Claimant also alleged that the ALJ made a number of errors in his step five analysis.  (DN 12-1, at PageID # 3635-38.)  At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 404.1560(c) (2021); *Jordan*, 548 F.3d at 423.  The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in

significant numbers in the economy that the claimant can perform considering the combination of his or her limitations.  *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson*, 378 F.3d at 548.   The undersigned will consider Claimant's individual arguments separately below.   Because the undersigned finds each of Claimant's arguments to be without merit, the undersigned finds that the ALJ's step five analysis was supported by substantial evidence.

### a)        Obsolete Job Descriptions

Claimant first argued that the ALJ's step five finding is unsupported by substantial evidence because the jobs proposed by the VE that Claimant could perform were based on obsolete jobs listed in the Dictionary of Occupational Titles ("DOT").  (DN 12-1, at PageID # 3636.)  Based on a hypothetical provided by the ALJ that mirrored the ALJ's ultimate determination of Claimant's RFC, the VE testified that Claimant could perform the jobs of folding machine operator (DOT # 208.685-014),  routing clerk (DOT # 222.687-022), and mail clerk (DOT # 209.687-026).  (R. at 22.)  Claimant argued that the DOT has not been updated since the early 1990s and that the particular jobs cited by the ALJ that Claimant could perform had not been updated since the 1980s.  (DN 12-1, at PageID # 3636.)  She argued that the VE should have supplemented his testimony with a "more up to date and reliable source."  (*Id.*)  The undersigned finds that Claimant forfeited this claim by failing to develop it through cross-examination.

Generally, an ALJ is permitted to rely on the testimony of a VE so long as "the ALJ either ensure[s] that the evidence does not conflict with the information in the DOT or obtain[s] a reasonable explanation for any conflict."[5]  *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317

---

[5] Where the ALJ relies on the testimony of a VE, SSR 00-4p imposes on the ALJ an affirmative duty to ask the VE whether there is a conflict between the VE's testimony and information in the DOT.  SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000).  If there appears to be a conflict, ALJ must elicit from the VE an explanation for the conflict. *Id.*

(6th Cir. 2020) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009), and *Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011)).  But nothing places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).  Thus, an "ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (citing *Lindsley*, 560 F.3d at 606).  It is instead the obligation of the claimant, "who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT" during the hearing; thus, failure to do so is not sufficient grounds for relief on judicial review.  *Id.*  In *O'Neal v. Comm'r of Soc. Sec.*, the Sixth Circuit applied these principles to a claimant's argument that the DOT descriptions of jobs cited by the VE were obsolete.  The Sixth Circuit held,

> Because the DOT continues to be recognized as a source of reliable job information and O'Neal did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that O'Neal was able to perform work that existed in significant numbers in the national economy.

*O'Neal*, 799 F. App'x at 318.  Here, as in *O'Neal*, Claimant did not question the VE at the hearing about the potential obsolescence of the jobs the VE cited and the ALJ did confirm that the VE's testimony was consistent with the DOT.  (R. at 59-67.)  Due to her failure to cross-examine the VE on the issue she has now raised, the undersigned finds she has forfeited her argument.

### b)      Inconsistent with RFC

Claimant next argued that the jobs cited by the VE were actually inconsistent with the ALJ's RFC determination.  (DN 12-1, at PageID # 3636-37.)  In particular, she argued that the folding machine operator job required assembly-line type production work that went against the

ALJ's description of Claimant's RFC.  (*Id.* at 3636.)  The ALJ indicated in determination of Claimant's RFC that she should "avoid[ ] all exposure to workplace hazards such as unprotected heights or moving mechanical parts" and that she needed "a low stress environment requiring . . . no assembly line work."  (R. at 16.)  Claimant emphasized that the DOT description of a folding machine operator states,

> Tends machine that folds advertising literature, forms, letters, or other paper sheets:
> Turns indicator knobs to adjust folding rollers, side guides, and stops, according to
> specified size and number of folds. Starts machine and feeds paper sheets between
> folding rollers. Removes folded sheets. May place folded sheets into envelopes
> preparatory to mailing.

U.S. Dep't of Labor, *Dictionary of Occupational Titles,* § 208.685-014 (rev. 4th ed. 1991) (1991 WL 671754).  Despite this description including references to a machine, the entry also stated elsewhere, "Moving Mech. Parts: Not Present - Activity or condition does not exist."  (*Id.*)  Given this clarification, it is unclear the Claimant has demonstrated that there is any conflict between the ALJ's RFC and the job description in the DOT.  Additionally, as with her argument regarding obsolescence above, the undersigned finds that Claimant's failure to cross-examine the VE about any potential discrepancy during the hearing forfeits this argument.  Again, the ALJ confirmed that the VE's testimony was consistent with the DOT as required by applicable law.  (R. at 59-67.)  Thus, he was under no duty to further inquire into the VE's testimony absent some prompt from Clamant or her counsel.  This lack of cross examination is particularly significant given that neither the ALJ nor the VE are bound by the DOT's classifications.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).  "Neither the DOT nor the VE['s] . . . evidence automatically 'trumps' when there is a conflict" between the two;  instead, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE['s] . . . testimony rather than on the DOT information."  SSR 00-4p, 65 Fed. Reg. at 75760.  Without

an objection on this basis, the ALJ had no reason to inquire further into the VE's testimony. Thus, because the ALJ asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, it was not error for the ALJ to rely on her testimony. Accordingly, the undersigned finds Claimant's argument to be without merit and that the VE's testimony constituted substantial evidence to support the ALJ's step five determination.

### c) Insufficient Number of Jobs

Finally, Claimant argued that "[t]he combined number of available jobs in the national economy [wa]s not sufficient" to meet the threshold required by the regulations. (DN 12-1, at PageID # 3637.) The VE testified that there were 119,960 folding machine operator positions, 74,788 routing clerk positions, and 69,822 mail clerk positions available nationally. (R. at 22.) The Sixth Circuit has held that it "cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Instead, "an ALJ must tailor the determination of what is significant to the facts of each claimant's case." *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016). Here, Claimant's arguments are without merit because the Sixth Circuit has previously held that a substantially fewer number of jobs than the more than 260,000 identified by the ALJ in this case was significant. *See Taskila*, 819 F.3d at 905 ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.' "); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (concluding that 2,000 jobs were significant); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (finding that fewer than 1000 regional jobs can be a significant number of jobs to determine whether a claimant is disabled). Claimant also argued that the VE's testimony did not address how the sit/stand option would erode the occupational base. (DN 12-1, at PageID # 3637.) However, the ALJ asked the VE at the outset

25

of her testimony to ensure that her testimony was consistent with the DOT and to call attention to any testimony that was not.  (R. at 60.)  The VE then clarified when giving her testimony that the DOT did not address the sit-stand option such that her testimony was based on her own experience.  (*Id.* at 62.)  It was only then that the VE provided the ALJ with the number of available jobs for each identified position that was consistent with his proposed hypothetical.  (*Id.*)  This progression of events suggests that—contrary to Claimant's argument—the VE had already made any necessary adjustments prior to providing the figures to the ALJ.  Thus, the undersigned rejects Claimant's argument and finds that the ALJ's step-five determination is supported by substantial evidence.

## III.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record

August 5, 2022

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).